USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: October 22, 2012

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
                                              :        09 Civ. 1350 (PAC)
IN RE FANNIE MAE 2008 ERISA LITIGATION        :        09  MDL.2013 (PAC)
                                              :        OPINION & ORDER
-----------------------------------------------------------------X

HONORABLE PAUL A. CROTTY, United States District Judge:

 This action arises out of the financial reversals experienced by Federal National

Mortgage Association (FNMA).  FNMA's decline in fortune has spawned a number of lawsuits,

alleging that as FNMA moved from more conservative investments (i.e., 20% down, 30-year

fixed-rate mortgages, prudently underwritten) to more exotic and risky investments (i.e., Alt-A,

sub-prime, low documentation, no documentation, imprudently underwritten); FNMA ignored

reports that the housing market was overheated; failed to recognize that the housing bubble was

about to burst; failed to make adequate disclosures; failed to have adequate risk controls in place

and made false and misleading representations in connection therewith.   See, e.g., In re Fannie

Mae 2008 Sec. Litig., No. 09 MDL 2013 (PAC), 2012 U.S. Dist. LEXIS 124008 (S.D.N.Y. Aug.

30, 2012); SEC v. Mudd, No. 11-cv-09202 (PAC), 2012 U.S. Dist. LEXIS 115087 (S.D.N.Y.

Aug. 10, 2012).

 Mary P. Moore and David Gwyer bring this action on behalf of all current and former

FNMA employees who are or were plan participants in FNMA's Employee Stock Option Plan

("ESOP") during the period from April 17, 2007 to May 14, 2010.  The Plan called for

investment in FNMA stock, which the Plan fiduciaries continued to hold as the stock fell from

$56.97 on April 17, 2010 to $1.01 on May 14, 2010.  (Am. Compl. ¶ 72.)  Plaintiffs allege that

Defendants breached their fiduciary duty under the Employee Retirement Income Security Act

(ERISA) by continuing to hold and failing to convert to cash FNMA stock in the ESOP.

The Plaintiffs' complaint alleges three claims: (1) Defendants breached their duty, under ERISA §§ 404 and 405 and 29 C.F.R. § 2550.404e-1(b)(B)(i)(ii), to prudently and loyally manage FNMA's ESOP, by continuing to invest in and failing to divest of FNMA's common stock when FNMA faced dire circumstances; and violated their co-fiduciary obligations by knowing of and failing to remedy other fiduciaries' breaches; (2) Defendants breached their duty to avoid conflicts of interest, in violation of ERISA §§ 404 and 405, by failing to engage independent fiduciaries who could make independent judgments concerning the Plan's investment in FNMA's securities; and (3) FNMA and the Director Defendants failed to adequately monitor the BPC Defendants, in violation of ERISA § 404.

The Defendants are Daniel H. Mudd, Herbert M. Allison, Stephen B. Ashley, Louis J. Freeh, Brenda J. Gaines, Bridget A. Macaskill, Dennis R. Beresford, David H. Sidwell, Greg C. Smith, Egbert L.J. Perry, Jonathan Plutzik, and Michael J. Williams ("Director Defendants") who had primary oversight of the ESOP; David C. Hisey, Christina A. Wolf, David C. Benson, Brian Cobb, Judith C. Dunn, Anthony F. Marra, Betty Thompson, Linda K. Knight, Brian P. McQuaid (Benefits Plan Committee ("BPC Defendants") who had fiduciary responsibilities covering the administration and management of the Plan and the Plan's assets) and John Doe Defendants 1-10.  On April 4, 2012, Defendants filed three motions to dismiss.[1]

For the reasons that follow, the Court GRANTS IN PART and DENIES IN PART Defendants' motions to dismiss.  Specifically, the Court dismisses Plaintiffs' second claim (breach of duty to avoid conflicts by failing to engage independent fiduciaries), and all claims

---

[1] The three motions were filed by: (1) the BPC Defendants; (2) certain Director Defendants: Mr. Allison,  Mr. Ashley, Mr. Freeh, Ms. Gaines, Ms. Macaskill, Mr. Beresford, Mr. Sidwell, Mr. Smith, Mr. Perry,  Mr. Plutzik, Mr. Williams, Ms. Dunn, and Ms. Knight; and (3) Mr. Mudd.  Mudd also moved to strike portions of the amended complaint that were derived from the SEC complaint in <u>SEC v. Mudd</u>, 11 Civ. 9202.  Mudd made the same motions in the private securities actions, and his motion is DENIED for the reasons discussed in the Court's prior opinion.  <u>See Lee</u>, 720 F.Supp.2d 305, 341 (S.D.N.Y. 2010) (finding that there is no rule barring private plaintiffs from relying on government pleadings and proceedings to meet pleading requirements).  <u>See In re Fannie 2008 Securities Litigation</u>, 08 Civ. 7831, Dkt # 423, 8/30/2012.

against the Director Defendants who became board members after FNMA was placed into conservatorship, but otherwise denies Defendants' motions to dismiss.[2]

## Background

The funds for FNMA's Plan come exclusively through contributions made by FNMA; and, with two limited exceptions, "all amounts contributed under the Plan shall be held by the Trustee under the Trust Agreement, to be managed, invested and reinvested in [FNMA] Stock." (Am. Comp. Ex. B §§ 4.1, 5.1.)[3]  The BPC is the Plan's named fiduciary, and had the authority to direct the Trustee as to which investments, in which proportions, the Plan should invest.  (Am. Compl. Ex. D § 4(b); Exs. A, C.)[4]  The Board had the authority to appoint, evaluate, and monitor members of the BPC.  (Am. Compl. ¶ 397.)  The Board also had the authority to determine the extent of FNMA's annual contribution to the Plan and whether contributions would be made in cash or stock.  (Am. Compl. Ex. B §§ 4.1-4.2.)  Notwithstanding the increasingly deteriorated state of the housing market generally and FNMA in particular, Plaintiffs allege that Defendants let the ESOP's assets fall into the cellar without paying attention to their value.

## Discussion

A.  <u>Whether Defendants Acted In A Fiduciary Capacity</u>

"A person is only subject to these fiduciary duties 'to the extent' that the person, among other things, 'exercises any discretionary authority or discretionary control respecting management of such plan' or 'has any discretionary authority or discretionary responsibility in

---

[2]  These Director Defendants are: Allison, Sidwell, Perry, Plutzik, Williams, Dunn, and Knight.

[3]  The two exceptions provide that: (1) "any assets of the Trust Fund not invested in Stock may be invested in short-term investments in accordance with the Trust Agreement, for temporary investment of Trust Fund assets pending eventual investment thereof in Stock . . . , or for the limited purpose of making distributions (including payment of cash dividends) to Participants"; and (2) current employees who are over the age of 55 and have participated in the Plan for 10 years, may elect to transfer their account to a Retirement Savings Plan to diversify their assets.  (<u>Id</u>. §§ 5.1, 7.6.)

[4]  The Fidelity options appeared to be for the two exceptions detailed above.

the administration of such plan.'"  <u>In re Citigroup ERISA Litig.</u>, 662 F.3d 128, 135 (2d Cir. Oct. 19, 2011) (quoting 29 U.S.C. § 1002(21)(A)).

BPC members are the named Plan fiduciaries, charged with "overseeing and administering the operation" of the Plan (BPC Charter Am. Compl. Ex. A; Am. Compl. ¶ 101) and, therefore, acted in a fiduciary capacity with respect to the alleged conduct.  <u>See</u> <u>In re Lehman Bros. Sec. & ERISA Litig.</u>, 683 F.Supp.2d 294, 298-99 (S.D.N.Y. 2010).

Plaintiffs have sufficiently pled the fiduciary status of Director Defendants Mudd, Ashley, Freeh, Gaines, Macaskill, Bresford, and Smith.  Director defendants have the requisite level of necessary control over Plan administration where directors exercise discretion over how to fund employer contributions during the Class Period.  <u>See</u> <u>In re Morgan Stanley ERISA Litig.</u>, 696 F.Supp.2d 345, 356-57 (S.D.N.Y. 2009).[5]  Here, Director Defendants had discretion to determine the extent of FNMA's annual contribution to the Plan, and whether the contribution would be made in FNMA stock or cash.  (Am. Compl. ¶ 53; Ex. B §§ 4.1-4.2.)  In January 2008, the Board chose to make a stock contribution of 347,757 shares to the Plan.  (Id. ¶ 62.)  Plaintiffs allege that by this point, the Director Defendants should have known that it was imprudent to award stock rather than cash to the Plan.  (<u>Id.</u> ¶ 73.)

Director Defendants Allison, Sidwell, Perry, Plutzik, Williams, Dunn and Knight, however, did not assume any fiduciary role until after FNMA was placed into conservatorship under the Federal Housing Finance Agency (FHFA) on September 6, 2008, after which no contributions were made to the Plan.  Since these Director Defendants were not involved in

---

[5]  The Second Circuit's opinion in <u>In re Halpin</u>, 566 F.3d 286 (2d Cir. 2009) does not, as Defendants argue, require a different result.  In <u>Halpin</u> the Circuit held that unpaid contributions to a plan were not plan "assets."  <u>Id.</u> at 289. Having so held, the Circuit concluded that it "need not address" whether the President of the company "exercised a level of control over those assets sufficient to make him a fiduciary."  <u>Id.</u>  In this case, as in <u>Morgan Stanley</u>, 696 F.Supp. 2d at 357, the Board chose to make a stock contribution to the Plan in January 2008, and acted in a fiduciary capacity in deciding to contribute stock rather than cash.

choosing either the contributions to the Plan or their form (id. ¶ 16), they could not have acted in a fiduciary capacity.[6]   The Court thus dismisses all claims against Director Defendants Allison, Sidwell, Perry, Plutzik, Williams, Dunn and Knight with prejudice.

    B.   First Claim: The Prudence/Divesture and Co-Fiduciary Claims

        The Second Circuit recently adopted the Moench presumption: a Plan fiduciary's decision to invest or retain an investment in employer stock is presumed to comply with ERISA, and will be reviewed only for an abuse of discretion.   In re Citigroup ERISA Litig., 662 F.3d at 138 (citing Moench, 62 F.3d at 571).  "Judicial scrutiny should increase with the degree of discretion a plan gives its fiduciaries to invest," (i.e., the less discretion, the less scrutiny).   Id. (citing Quan v. Computer Scis. Corp., 623 F.3d 870, 881 (9th Cir. 2010)).

> The presumption is to serve as a 'substantial shield,' that should protect fiduciaries from liability where 'there is room for reasonable fiduciaries to disagree as to whether they are bound to divest from company stock.'  The test of prudence is . . . one of conduct rather than results, and the abuse of discretion standard ensures that a fiduciary's conduct cannot be second-guessed so long as it is reasonable. . . .  We judge a fiduciary's actions based upon information available to the fiduciary at the time of each investment decision and not 'from the vantage point of hindsight.'

Id. at 140.  The Circuit articulated the test for rebutting the presumption of prudence:

> [F]iduciaries should override Plan terms requiring . . . investment in employer stock only when 'owing to circumstances not known to the [plan] settlor and not anticipated by him,' maintaining the investment in company stock 'would defeat or substantially impair the accomplishment of the purposes of the plan.

Id. (citations omitted).  "Dire" circumstances do not include "stock fluctuations, even those that trend downhill significantly," nor do they include "bad business decisions."   Id.

        Given that the Plan provided that "all amounts contributed under the Plan shall be . . . invested and reinvested in [FNMA] Stock," the Plan's fiduciaries had minimal discretion over

---

[6]   Even if these Director Defendants had acted in a fiduciary capacity, FNMA's stock price, and consequentially the value of the Plan's assets, increased from its $0.48 post-conservatorship price to $1.01 by the end of the class period.

investment decisions.  (Am. Comp. Ex. B 2007 Plan Document ¶ 5.1 at 7.)[7]  Accordingly, the

Court gives greater deference to Defendants' actions.  See In re Citigroup ERISA Litig., 662

F.3d at 138-39.

The BPC Defendants argue that Plaintiffs cannot overcome the presumption of prudence

because: (1) Plaintiffs failed to allege facts showing that FNMA faced a "dire situation" which

the Plan settler did not know or anticipate, or show that the Defendants knew of the alleged dire

circumstances; and (2) securities laws prevented Defendants from divesting company stock.

### 1.  The Settlor's Intent

Defendants argue that FNMA was established in response to the Great Depression to

make home ownership accessible to low and middle income individuals.  Therefore, the

possibility that FNMA would finance for higher risk borrowers without adequate controls to

assess and monitor risks was not unforeseeable to FNMA's settlors.  (BPC Br. 6-7, 10.)

Defendants also argue that since the Plan was amended and restated in 2007, and

continued the requirement for investment in FNMA stock, the settlors must have intended to

retain the Plan's investment in FNMA stock, even after FNMA's shift to a higher risk profile.

This raises the issue of the time at which the settlor's intent should be analyzed.  Moench does

not provide an explicit answer, but suggests that settlor's intent is to be determined at the time of

Plan creation.  Moench, 62 F.3d at 570-71.[8]  This interpretation is logical.  Holding otherwise

allows a company and its executives to avoid liability for their imprudent acts by simply

amending small terms or restating the Plan on a frequent basis.  The initial 1987 mandate to

---

[7]  The overwhelming majority of Plan assets were invested in FNMA stock.
[8]  For example, the Moench court states: "[W]hile the fiduciary presumptively is required to invest in employer securities, there may come a time when such investments no longer serve the purpose of the trust, or the *settlor's intent*."  Id. at 571 (emphasis added).  "[I]n reviewing the fiduciary's actions, the court must be governed by the intent behind the trust-in other words, the plaintiff must show that the ERISA fiduciary could not have believed reasonably that continued adherence to the ESOP's direction was in keeping with the settlor's expectations of how a prudent trustee would operate."  Id.

maintain the Plan's investment in FNMA common stock was not changed in 2007.  Accordingly,

the Court considers only FNMA's intent as of 1987.  In 1987, when the Plan was adopted,

FNMA predominantly purchased fixed-rate, 30-year, prime mortgages.  (Am. Compl. ¶¶ 130-

31.)  Plaintiffs' allegations create a question of fact as to whether the Plan's 1987-settlors would

have foreseen FNMA's shift from these more conservative mortgages to participating in a new

phase of the home financing market by investing in riskier subprime, Alt-A and low-

documentation loans, without adequate risk controls in place.

> 2.   A Dire Situation Known to Defendants

Plaintiffs argue that the Defendants knew or should have known of external warnings

indicating dire circumstances, including: the growing rate of foreclosures as reported by FNMA

itself (Am. Compl. ¶¶ 266, 316); concerns about the viability of the housing market (id. ¶¶ 163-

66); regulators' concerns about lessened underwriting standards (id. ¶¶ 149-50); claims that the

housing bubble had "burst" and there would be further deterioration (id. ¶ 157); and commentary

regarding the prudence of FNMA's increasing participation in the subprime market (id. ¶¶ 202,

204, 223).  Plaintiffs also allege internal warnings, such as FNMA's risk control officers'

warnings to Mudd (id. ¶187-88), OFHEO's letter to Mudd indicating that FNMA remained a

"significant concern" (id. ¶ 323); FHFA's report to FNMA detailing concerns about

undercapitalization and risk management (id. ¶ 330), Mudd's own statements predicting "the

immediate crisis in subprime" (id. ¶ 322), and FNMA's public admissions of the riskiness of

certain loan practices (id. ¶¶ 199, 226).

Defendants certainly knew of FNMA's publicly disclosed deteriorating financial

condition.  (See id. ¶¶ 260-61.)  FNMA itself was disclosing facts pertinent to the market-wide

decline.  (Id. ¶ 266.)  Defendants also must have been aware of the decline in the value of the

Plan's assets, which fell from approximately $116 million to $85 million in 2007 and dropped to $17.5 million by April 2008.  (Id. ¶¶ 68, 282.).  By December 31, 2008, the Plan's assets were valued at approximately $1.29 million.  (Id. ¶ 69.)

Defendants argue that the stock price incorporated the risks FNMA was taking, and thus always reflected FNMA's true value.  Plaintiffs' claim here, however, is not that Defendants "should have divested the plans of [FNMA] stock because the stock's risk was improperly priced.  Rather, [Plaintiffs] claim that the risk was so *great* that, efficiently priced or not, it was imprudent under the circumstances to subject the plan's assets to it."  See In re Ford Motor Co. ERISA Litig., 590 F.Supp.2d 883, 890 (E.D. Mich. 2008).  A stock drop by itself is "'insufficient to establish the requisite imprudence to rebut the presumption.'"  In re Citigroup ERISA Litig., 662 F.3d at 140.  Plaintiffs, however, have plausibly alleged that Defendants knew both the causes of the price drop and the reasons that it was imprudent to retain the Plan's investment in FNMA stock.  See In re Citigroup ERISA Litig., 662 F.3d at 140.[9]

Similar allegations have been found sufficient to state a claim.[10]  In In re AIG, Inc. ERISA Litig. II, No. 08 Civ. 5722 (LTS)(KNF), 2011 WL 1226459, at *7 (S.D.N.Y. Mar. 31,

---

[9] Plaintiffs have not plausibly stated when FNMA's situation became "dire."  While Plaintiffs claim that FNMA's situation became "dire" on April 17, 2007, FNMA's stock was still trading at a high price of $56.97 per share at that point.  (Id. ¶¶ 73, 196.)  By the end of 2007, the Plan still had approximately $85 million in assets.  (Id. ¶ 68.)  This is not "dire."  As Judge Posner opined, however, "determining the 'right' point, or even range of 'right' points, for an ESOP fiduciary to break the plan and start diversifying may be beyond the practical capacity of the courts to determine."  Summers v. State Street Bank & Trust Co., 453 F.3d 404, 411 (7th Cir. 2006).  The "right point" is certainly not at the pleading stage.  Nonetheless, at some point prior to conservatorship on September 6, 2008, Plaintiffs here plausibly allege that it became imprudent to retain the Plan's investment in FNMA stock.  The timing when the investment became imprudent presents questions of fact.

[10] The Second Circuit's findings that Citigroup and JP Morgan did not face "dire circumstances" when the housing bubble burst are not dispositive here.  Those banks had only a portion of their assets in housing-related sectors, while all of FNMA's assets were in the housing market.  Their exposure was materially different.  See Fisher v. JP Morgan Chase & Co., 469 F.App'x 57, 59 (2d Cir. May 8, 2012) (summary order); In re Citigroup, 662 F.3d at 141 (stating that even if Defendants undertook an investigation "it would not have been compelled to find that Citigroup, with a market capitalization of almost $200 billion, was in a dire situation" due to its limited subprime investments); Cf. Am. Compl. ¶¶ 206-24 (noting government and analyst reports that FNMA was severely undercapitalized, including the allegation that a few months into the Class Period, "the combined value of Fannie Mae's subprime and Alt-A mortgage-backed bonds was $76 billion—almost double Fannie Mae's $40 billion of capital.").

2011), the court found that the defendants knew of circumstances—such as notification of weakened risk control measures, evidence of mounting risk in the residential housing market, increased leverage, etc.—that warranted further investigation.  Had the defendants done so, they would have found that AIG stock was an imprudent investment, before the stock dropped by over 99%.  Id.  In Veera v. Ambac Plan Admin. Comm., 769 F.Supp.2d 223, 229-30 (S.D.N.Y. 2011), the plaintiffs' allegation of a 99% stock drop, combined with public announcements detailing the company's demise, were sufficient to overcome the presumption of prudence.[11]

Here, Plaintiffs' allegations are sufficient to show that (1) Defendants had actual or constructive knowledge of FNMA's dire circumstances, and/or (2) had Defendants undertaken an investigation, they would have ascertained that continued investment in FNMA stock was imprudent.  See In re Citigroup ERISA Litig., 662 F.3d at 140 (finding that a fiduciary can be found liable for failing to investigate where plaintiffs "allege facts that, if proved, would show that an 'adequate investigation would have revealed to a reasonable fiduciary that the investment at issue was improvident.'").

The Second Circuit's presumption of prudence sets a very high threshold; but if FNMA's alleged situation—like those alleged in In re AIG ERISA, 2011 WL 1226459 (S.D.N.Y. Mar. 31, 2011) and Ambac, 769 F.Supp.2d at 229-30—is not sufficiently "dire" to state a claim, it is not clear what would be sufficient.  Accordingly, the Court finds that Plaintiffs have plausibly pled that the BPC Defendants violated their duty of prudence.  In addition, Plaintiffs have plausibly alleged that the Director Defendants Mudd, Ashley, Freeh, Gaines, Macaskill, Bresford, and Smith continued to make stock contributions to the Plan—rather than cash contributions—at a point in time when it was imprudent to do so.

---

[11]  While this opinion was issued before In re Citigroup, the court held that even if the Moench presumption applied, the plaintiffs' allegations were sufficient to state a claim.  769 F.Supp.2d at 229-30 n.2.

3.  <u>Potential Securities Law Violations</u>

Finally, BPC Defendants argue that they cannot be found liable for a breach of their duty of prudence because divesting the Plan's assets of FNMA's stock would involve trading on insider information; alternatively, disclosure of non-public information before divesting would have caused the very decline in stock price that Plaintiffs sought to avoid.  (BPC Br. 18-20.)

This argument has been "regularly rejected . . . as a justification for avoiding fiduciary duties under ERISA."  <u>In re Morgan Stanley</u>, 696 F.Supp.2d at 357.  Defendants could have "taken a variety of steps that would not have been violations of the securities laws, including independently evaluating the prudence of the maintenance of the [company] Stock Fund as an investment option under the Plans, ceasing new investments in the [company] Stock Fund, questioning the valuation of in-kind stock contributions to the Plans, [or] considering whether public disclosure of material information would have been in the best interests of the Plans' participants . . . ."  <u>In re AIG ERISA</u>, 2011 WL 1226459, at *8.  At this juncture, the possibility that Defendants might be charged with securities fraud violations, competing with their ERISA obligations, does not preclude Plaintiffs' prudence claim.

4.  <u>Co-Fiduciary Liability</u>

Co-fiduciary liability arises by "participat[ing] knowingly in, or knowingly undertak[ing] to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach" or " [knowing] of a breach by such other fiduciary, unless . . .  reasonable efforts [are made] under the circumstances to remedy the breach."  29 U.S.C.A. § 1105(a) (West 2009). "[A]llegations of fiduciary authority, factual circumstances warranting investigation into the prudence of maintaining the company stock funds, the fiduciaries' failure to investigate, and co-fiduciaries' knowledge of, and failure to remedy, this failure to investigate are sufficient to plead

plausibly both underlying breaches and grounds for co-fiduciary liability."  In re AIG ERISA, 2011 WL 1226459, at *11.  Plaintiffs' allegations that Mudd received warnings about FNMA's risk control measures, and had predicted an immediate crisis in the subprime market, are more than sufficient to plausibly allege that he knew of, and failed to remedy the BPC Defendants' breach of fiduciary duty in maintaining the Plan's investment in FNMA stock, despite FNMA's dire situation.  Similarly, Plaintiffs have plausibly alleged that the pre-conservatorship Director Defendants and the BPC Defendants knew of circumstances suggesting that FNMA was in a dire situation, and each other's failure to divest the Plan of company stock.  Accordingly, Defendants' motions to dismiss this claim are denied.[12]

    C.  Second Claim: Conflicts of Interest

        Plaintiffs allege two conflicts of interest: (1) Defendants' compensation conflicted with the execution of their fiduciary duties (Am. Compl. ¶ 359.); and (2) Defendants failed to "timely engage independent fiduciaries who could make independent judgments concerning the Plan's massive investment in the Company's own securities." (Id. ¶ 392.)  Plaintiffs' first theory of liability is without merit because a conflict-of-interest claim cannot be based solely on the link between an ERISA fiduciary's compensation and company stock.  In re Citigroup ERISA Litig., 662 F.3d at 145-46.  Plaintiffs' second theory is without merit because Plaintiffs have not alleged any underlying conflict of interest that needed to be ameliorated through engaging independent fiduciaries.[13]

---

[12] As Plaintiffs have expressly dropped their misrepresentation claim under Count One (Opp. Mudd/Indiv. at 15 n.10), the Court need not consider this claim.

[13] The Second Circuit also held that fiduciaries have no duty to disclose non-public information to Plan members.  In re Citigroup, 662 F.3d at 145-46.  Therefore, there was no conflict between Defendants' disclosure obligations to the Plan and the public.

    D.  Third Claim: Failure to Monitor

        Since the Director Defendants, as board members, had the authority to appoint and remove members of the BPC (Am. Compl. ¶¶ 88, 397, BPC Charter), they had a fiduciary duty to monitor the BPC Defendants.  See In re AIG ERISA Litig., 2011 WL 1226459, at *5; In re Am. Exp. Co. ERISA Litig., 762 F.Supp.2d 614, 630 (S.D.N.Y. 2010).  Defendants argue that: (1) they had no affirmative duty to provide information to the Plan fiduciaries; (2) that they were not aware of any "business problems" that were not accessible to the monitored fiduciaries; and (3) that Plaintiffs' allegations that Defendants knew or should have known that the fiduciaries were acting imprudently are conclusory.  (D. Br. at 11.)

        For the reasons discussed above, Plaintiffs have sufficiently alleged that the pre-conservatorship Director Defendants and FNMA knew or should have known that FNMA was in a dire situation and that BPC members were doing nothing to protect the Plan's assets. Assuming that the pre-conservatorship Director Defendants and FNMA were monitoring the BPC Defendants at all, they observed the Plan lose 98% of its value, without intervening or replacing any BPC Defendant.

        Allegations of inadequate performance by appointee fiduciaries support a claim of breach of the duty to monitor.  In re AIG ERISA, 2011 WL 1226459, at *9; see also Ambac, 769 F.Supp.2d at 231 (holding that allegations that the defendants "simply stood by and watched the value of Ambac stock decline precipitously" was sufficient to plausibly allege that "the monitoring fiduciaries failed to provide sufficient attention, if any, to the risks of the continued purchase and retention of Ambac stock.").  Accordingly, Plaintiffs' allegations are sufficient to

state a claim for failure to monitor against Director Defendants Mudd, Ashley, Freeh, Gaines, Macaskill, Bresford, and Smith.[14]

## CONCLUSION

For the reasons stated above, the Court GRANTS IN PART and DENIES IN PART Defendants' motions to dismiss. Specifically, the Court dismisses Plaintiffs' second claim, and all claims against the Director Defendants who became board members after FNMA was placed into conservatorship. Defendants' motions are denied in all other respects.

The Clerk of Court is directed to terminate these motions (Dkt. Nos. 65, 66, 69, 73), and dismiss Defendants Allison, Sidwell, Perry, Plutzik, Williams, Dunn, and Knight from this action.

Dated:  New York, New York
        October 22, 2012                        SO ORDERED

                                                PAUL A. CROTTY
                                                United States District Judge

---

[14] While Director Defendants are correct that there is authority in this district providing that they had no affirmative duty to share information with the BPC Defendants, this does not foreclose liability for their failure to act upon warning signs concerning the prudence of the Plan's investment, as discussed above.

13