```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
                                                                  :
IN RE: FANNIE MAE 2008 ERISA                                      :    09 Civ. 1350 (PAC)
LITIGATION                                                        :
                                                                  :
------------------------------------------------------------------X
                                                                  :
IN RE: FANNIE MAE SECURITIES & ERISA                              :    09 MDL 2013 (PAC)
LITIGATION                                                        :
                                                                  :    ORDER AND OPINION
------------------------------------------------------------------X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: April 21, 2014

HONORABLE PAUL A. CROTTY, United States District Judge:

Defendants Stephen Ashley, David Benson, Dennis Beresford, Brian Cobb, Louis Freeh, Brenda Gaines, David Hisey, Bridget Macaskill, Anthony Marra, Brian McQuaid, Greg Smith, Elizabeth Thompson, and Christine Wolf (collectively, "Defendants") move for reconsideration of the Court's October 22, 2012 Order and Opinion in light of the Second Circuit's decision in *Rinehart v. Akers*, 722 F.3d 137 (2d Cir. 2013) ("*Lehman*").[1] *See In re Fannie Mae 2008 ERISA Litig.*, Nos. 09 Civ. 1350, 09 MDL 2013, 2012 WL 5198463 (S.D.N.Y. Oct. 22, 2012) ("*Fannie Mae*"). For the reasons stated below, Defendants' motion is DENIED.

## BACKGROUND

### I. Prior Proceedings

The Court assumes familiarity with its previous rulings in this matter. *See Fannie Mae*, 2012 WL 5198463. Plaintiffs bring this action on behalf of all current and former Federal National Mortgage Association ("FNMA") employees who are or were plan participants in FNMA's Employee Stock Option Plan ("ESOP") during the period from April 17, 2007 to May 14, 2010. Plaintiffs allege that Defendants breached their fiduciary duty under the Employee

---

[1] Defendant Daniel Mudd also reviewed the motion for reconsideration and adopts the arguments as his own. *See* Memorandum of Law in Support of Defendants' Motion for Reconsideration ("Def.'s Mot.") at 2 n.2.

1

Retirement Income Security Act ("ERISA") by continuing to hold and failing to convert to cash FNMA stock in the ESOP despite the stock's drop in price from $56.97 on April 17, 2007 to $1.01 on May 14, 2010.  Specifically, Plaintiffs allege the following three claims:  (1) Defendants breached their duty to prudently and loyally manage FNMA's ESOP by continuing to invest in and failing to divest of FNMA's common stock when FNMA faced dire circumstances; (2) Defendants breached their duty to avoid conflicts of interest by failing to engage independent fiduciaries who could make independent judgments concerning the plan's investment in FNMA's securities; and (3) FNMA and the Director Defendants failed to adequately monitor the Benefits Plan Committee.

On October 22, 2012, the Court granted in part and denied in part Defendants' motions to dismiss.  As to the first claim (breach of duty to prudently and loyally manage), the Court applied the *Moench* presumption, as adopted by the Second Circuit in *In re Citigroup ERISA Litigation*, 662 F.3d 128 (2d Cir. 2011) ("*Citigroup*").  *See Fannie Mae*, 2012 WL 5198463, at *3.  *Moench* presumes that a plan's fiduciaries complied with ERISA and reviews the fiduciaries' decision only for an abuse of discretion.  *Id*. (citing *Citigroup*, 662 F.3d at 138).  Fiduciaries are expected to "'override Plan terms requiring . . . investment in employer stock only when owing to circumstances not known to the [plan] settler and not anticipated by him, maintaining the investment in company stock would defeat or substantially impair the accomplishment of the purposes of the plan.'"  *Id*. (quoting *Citigroup*, 662 F.3d at 140) (alterations in original).  "'Dire' circumstances do not include stock fluctuations, even those that trend downhill significantly, nor do they include bad business decisions.'"  *Id*. (quoting *Citigroup*, 662 F.3d at 140).  Defendants claimed that Plaintiffs could not overcome the presumption of prudence because (1) Plaintiffs failed to allege facts showing that FNMA faced

2

"dire" circumstances or knew about those circumstances, and (2) securities laws prevented Defendants from divesting FNMA stock. *Id.*

The Court rejected both arguments. The Court recognized that a sharp stock drop did not overcome the presumption; but it held that Plaintiffs had "plausibly alleged that Defendants knew both the causes of the price drop and the reasons that it was imprudent to retain the Plan's investment in FNMA stock." *Id.* at *5. As a result, the Court held that Plaintiffs' allegations were sufficient to show that "(1) Defendants had actual or constructive knowledge of FNMA's dire circumstances, and/or (2) had Defendants undertaken an investigation, they would have ascertained that continued investment in FNMA stock was imprudent." *Id.* Furthermore, the Court held that Defendants could have taken a variety of steps to evaluate the prudence of maintaining the FNMA investments without violating the insider trader laws. *See id.* at *6. Thus, "[a]t this juncture, the possibility that Defendants might be charged with securities fraud violations, competing with their ERISA obligations, does not preclude Plaintiffs' prudence claim." *Id.* Accordingly, the Court denied Plaintiffs' motions to dismiss on the first claim. As to the remaining issues, the Court dismissed Plaintiffs' second claim (breach of duty to avoid conflicts) and all claims against the Director Defendants who became board members after FNMA was placed into conservatorship. *See id.* at *2.

**II.      The Second Circuit's *Lehman* Decision**

On July 15, 2013, the Second Circuit applied the *Moench* presumption in a case brought on behalf of all former employees of Lehman Brothers Holdings Inc. ("Lehman"), or its subsidiaries, who participated in the Lehman Brothers Savings Plan. *See Lehman*, 722 F.3d at 140-41. The *Lehman* plaintiffs alleged that the plan's fiduciaries breached their duties under ERISA by failing to limit or divest the plan's investment in Lehman stock between March 16,

2008 (the date that Bear Stearns was acquired by JPMorgan Chase) and June 10, 2009 (the date that the benefits plan committee liquidated shares of Lehman stock). *See id.* Specifically, the plaintiffs alleged that the defendants should have been aware of the risks to Lehman's financial stability and should have undertaken a reasonable investigation, which would have revealed these risks. *See id.* at 142-43.

Before applying the *Moench* presumption, the Second Circuit addressed whether plaintiffs could claim that the defendants knew or should have known that Lehman stock was an imprudent investment based on material, nonpublic information. *See id.* at 146-47. The court held that "[t]he duty of prudence must not be construed to include an obligation to affirmatively seek out material, nonpublic information pertaining to plan investments." *Id.* at 147. A fiduciary's duty "to prudently discharge his obligations 'solely in the interest of the participants and beneficiaries' should be read to end with the words *within the bounds of the law*." *Id.* (quoting 29 U.S.C. § 1104(a)(1)(B)) (emphasis in original).

Next, the Second Circuit held that plaintiffs could not rebut the *Moench* presumption "because they fail to allege facts sufficient to show that the Benefit Committee Defendants knew or should have known that Lehman was in a 'dire situation' based on information that was publically available during the class period." *Id.* at 150. The court rejected plaintiffs' arguments that the sale of Bear Stearns, the general climate for financial firms in 2008, and the collective information known to the committee by virtue of their positions at Lehman counter the presumption. *Id.* The court found plaintiffs' claims "conclusory" and held "that, regardless, they merely show that the members of the Benefit Committee would have possessed comparable knowledge to the market analysts and investors who helped maintain Lehman's substantial market capital even immediately prior to the company's bankruptcy." *Id.* Ultimately, the

4

Second Circuit held "that the sum of Plaintiffs' plausible allegations do not overcome the *Moench* presumption" because "[m]arket fluctuations and an above-water price immediately in advance of bankruptcy would not have put a prudent investor on notice that Lehman had reached a 'dire situation.'"  *Id.* at 151.

## DISCUSSION

### I. Legal Standard

Federal Rule of Civil Procedure 54(b) provides that "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties . . . may be revised at any time before the entry of a judgment[.]"  The Second Circuit has "limited district courts' reconsideration of earlier decisions under Rule 54(b). . . . [T]hose decisions may not usually be changed unless there is an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent a manifest injustice."  *Official Comm. of the Unsecured Creditors of Color Tile, Inc. v. Cooper & Lybrand, LLP*, 322 F.3d 147, 167 (2d Cir. 2003) (quotations omitted).  The party moving for reconsideration bears the burden of demonstrating an intervening change of controlling law.  *In re Rezulin Prods. Liability Litig.*, 224 F.R.D. 346, 350 (S.D.N.Y. 2004).  Whether to grant a motion for reconsideration is within the discretion of the district court, *see Color Tile*, 322 F.3d at 167, but reconsideration requires that the "court . . . have a 'clear conviction of error with respect to a point of law on which its previous decision was predicated.'"  *Green v. Beer*, No. 06 Civ. 4156 (KMW), 2009 WL 3401256, at *2 (S.D.N.Y. Oct. 22, 2009) (quoting *Fogel v. Chestnutt*, 668 F.2d 100, 109 (2d Cir. 1981)).

**II.     Analysis**

   **A.     *Lehman* Does Not Require Reconsideration**

Reconsideration is unwarranted because *Lehman* did not create a new standard; rather, it applied the standard adopted in *Citigroup*. *See, e.g.*, *Lehman*, 722 F.3d at 145 ("We recently adopted the *Moench* presumption in *Citigroup*."). Similarly, this Court applied that standard in its October 22, 2012 Order and Opinion. *See, e.g.*, *Fannie Mae*, 2012 WL 5198463, at *3 ("The Second Circuit recently adopted the *Moench* presumption: a Plan's fiduciary's decision to invest or retain an investment in employer stock is presumed to comply with ERISA, and will be reviewed only for an abuse of discretion."). The question considered in both courts was whether the plaintiffs alleged sufficient facts to rebut the *Moench* presumption. The conclusions differed not because of the legal principles but because the factual allegations were different.

Defendants go to great lengths to demonstrate that "[t]he allegations in *In re Lehman ERISA* are indistinguishable from the allegations in this action." *See* Def.'s Mot. at 3; *see also* Declaration of Michael J. Walsh, Jr. in Support of Defendants' Motion for Reconsideration ("Walsh Decl."), Ex. 3 (comparing various allegations in both cases). Yet Fannie Mae and Lehman were different entities with different business models. Thus, whether the situation was "dire" would necessarily hinge on different factors. Certainly the analysis in *Lehman* is influential, but "it is not enough that [a party] could now make a more persuasive argument." *See Green*, No. 2009 WL 3401256, at *2 (internal quotations omitted). *Lehman* simply "applied the same substantive law that it had applied in previous rulings" and therefore does not constitute intervening law. *See Color Tile, Inc.*, 322 F.3d at 167-68. As a result, reconsideration of the Court's October 22, 2012 Order and Opinion is not warranted.

Defendants cite *N.J. Carpenters Health Fund v. DLJ Mortgage Capital, Inc.*, No. 08 Civ. 5653, 2013 WL 357615 (S.D.N.Y. Jan. 23, 2013) ("*N.J. Carpenters II*"), where the Court had previously dismissed claims relating to three offerings in which plaintiff had not purchased certificates on the grounds that plaintiff lacked standing to bring the claims.  *See N.J. Carpenters Health Fund v. DLJ Mortgage Capital, Inc.*, No. 08 Civ. 5653, 2010 WL 1473288 (S.D.N.Y. Mar. 29, 2010) ("*N.J. Carpenters I*").  Following *N.J. Carpenters I*, the Second Circuit held that a securities purchaser could have standing to bring suit on behalf of purchasers of other certificates under certain circumstances.  *See NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145 (2d Cir. 2012) ("*NECA*").  In light of this "change in controlling law," the Court reconsidered its decision in *N.J. Carpenters I*.  *See N.J. Carpenters II*, 2013 WL 357615, at *4.  But there is no basis for reconsideration here.  *NECA* articulated a "new test" for determining class standing for securities purchasers, while *Lehman* merely applied the existing standard to a new set of facts.

> **B.**     ***Lehman* Does Not Alter the Court's Conclusions**

Even if *Lehman* constitutes a change in controlling law, its conclusions do not diminish the sufficiency of Plaintiffs' allegations.  Defendants argue that "two key holdings" in *Lehman* support dismissal of Plaintiffs' duty of prudence claim.  First, "in light of *Lehman*'s holding that defendants have no 'obligation to affirmatively seek out material, nonpublic information pertaining to [ESOP] investments,' *Lehman*, 722 F.3d at 147, Defendants submit that the Court should reconsider its conclusion that 'had defendants undertaken an investigation, they would have ascertained that continued investment in [Fannie Mae] stock was imprudent.' *Fannie*, 2012 WL 5198463, at *5."  *See* Defendants' Reply in Support of Defendants' Motion for Reconsideration ("Def.'s Reply") at 1 (alterations in original).  But this Court never required

7

Defendants to seek out nonpublic information and therefore violate insider trading laws.  In fact, the Court identified a "variety of steps" that Defendants could have taken to investigate Fannie Mae's situation "that would not have been violations of the securities laws."  *Fannie Mae*, 2012 WL 5198463, at *6 (internal quotations omitted).[2]  Furthermore, even if the findings do conflict (which they do not), the Court did not premise its holding on this finding.  Instead, the Court independently held that "Plaintiffs' allegations are sufficient to show that . . . Defendants had actual or constructive knowledge of FNMA's dire circumstances."  *Id.* at *5.  No investigation was necessary for Defendants to recognize that dire circumstances existed.  *See id.* at *4 ("Defendants certainly knew of FNMA's publically disclosed deteriorating financial condition.").  As a result, *Lehman*'s holding regarding a fiduciary's duty to investigate is not dispositive here.

Second, Defendants request reconsideration in light of *Lehman*'s holding "that allegations regarding public warning signs about corporate risk and a deteriorating financial condition are not sufficient to put a prudent fiduciary on notice of 'dire circumstances' where the company's stock price remained 'above-water.'"  Def.'s Reply at 2 (quoting *Lehman*, 722 F.3d at 151).  Yet the Second Circuit's holding was not nearly so broad.  Rather, the court held that Plaintiffs' claims regarding public warning signs were conclusory and that, regardless, they could not overcome the *Moench* presumption considering the "mixed signals" Lehman's fiduciaries grappled with throughout the class period.  *Lehman*, 722 F.3d at 151.  For example, in addition to the above-water price, the court also identified Lehman's public statements regarding

---

[2] Defendants claim that *Lehman* held that these steps are unnecessary.  In support, Defendants quote *Lehman*'s finding that "'if plan managers are obligated to conduct an investigation into the financial condition of a plan asset *that extends to material, nonpublic information*, plan managers will face a dilemma if inside information shows that continued investment is imprudent.'"  Def.'s Reply at 5 (quoting *Lehman*, 722 F.3d at 147) (emphasis added).  But only one of the "variety of steps" identified by the Court arguably would have involved nonpublic information.  *See Fannie Mae*, 2012 WL 5198463, at *6 (suggesting that fiduciaries consider "whether public disclosure of material information would have been in the interests of the Plans' participants").

8

its $41 billion liquidity pool as a "mixed signal" that implied that the company was still in good financial health. *Id.* The Court also noted that the forced sale of Bear Stearns demonstrated that Lehman's fiduciaries "may have believed that Lehman would be saved as well." *Id.* at 150. No such mixed signals existed here.

Defendants respond that Fannie Mae's "above-water price" served as a mixed signal demonstrating that the Plan's investment was still prudent. Such a holding would immunize the directors if a company's stock price has any value. Prudence demands more than that. Although there may be difficulty in determining when stock becomes imprudent, "selling when bankruptcy is declared will almost certainly be too late." *See Summers v. State Street Bank & Trust Co.*, 453 F.3d 404, 411 (7th Cir. 2006). In fact, after describing an above-water price as an estimate of the stock's value, the Second Circuit "realize[d], of course, that it is not quite that simple." *Lehman*, 722 F.3d at 149. The court then analyzed whether the "sum" of Plaintiffs' plausible allegations regarding publically available facts demonstrated that a dire situation existed. *See id.* at 150-51. Read as a whole, *Lehman* makes clear that an above-water price is only relevant in the context of <u>all</u> signals indicating whether the defendants knew that dire circumstances existed. As a result, the Court will not adopt a rule allowing fiduciaries to avoid divesting so long as the stock retains some value.

There were also material differences between Lehman and Fannie Mae that make the cases distinguishable. Banks like Lehman "had only a portion of their assets in housing-related sectors, while all of FNMA's assets were in the housing market." *See Fannie Mae*, 2012 WL 5198463, at *5 n.10. Thus, Lehman's diversification of its investments gave its fiduciaries reason to believe that Lehman might weather the financial storm. In contrast, Fannie Mae's "focus on the housing industry during a housing crisis," *see* Def.'s Mot. at 3 n. 4, made it nearly

certain that Fannie Mae could not. More importantly, Fannie Mae may have shifted its risk profile in a way that was unforeseeable to the Plan's settlors. As the Court noted, there exists "a question of fact as to whether [Fannie Mae's] settlors would have foreseen [its] shift from . . . more conservative mortgages to participating in a new phase of the home financing market by investing in riskier subprime, Alt-A and low-documentation loans, without adequate risk controls in place." *Fannie Mae*, 2012 WL 5198463, at *4. Defendants respond that "the Court need not revisit this issue" to rule in its favor, *see* Def.'s Reply at 2, and that "a change in business strategy cannot be assessed with the benefit of hindsight," *see id.* at 3. But any shift in Fannie Mae's risk profile is certainly relevant as to whether Defendants knew that circumstances existed "placing the employer in a 'dire situation' that was objectively unforeseeable by the settlor." *See Citigroup*, 662 F.3d at 140. Under *Citigroup*, a court necessarily has to compare the present circumstances against what was known by the settlor.[3] As a result, *Lehman* does not require the Court to alter its October 22, 2012 Order and Opinion.

## CONCLUSION

Accordingly, the Court DENIES Defendants' motion for reconsideration.

Dated: New York, New York
April 21, 2014

SO ORDERED

PAUL A. CROTTY
United States District Judge

---

[3] According to Defendants, this argument suggests that "the Plan's investment in Fannie Mae stock pursuant to its mandatory term was imprudent for years—perhaps since as early as 2005—because the fiduciaries could have predicted the outcome that followed." *See* Def.'s Reply at 3. But that conclusion is unfounded. Dire circumstances exist when the overall risk at a company is more than the plan's settlor could have anticipated. While the risk at Fannie Mae certainly increased as a result of its new investment strategy, the circumstances became "dire" only after that strategy began to unravel and nothing was done, except the continuation of the strategy.