## UNITED STATES DISTRICT COURT FOR
## THE SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| IN RE:  2008 FANNIE MAE ERISA LITIG. | ) <br> ) <br> ) 09-CV-01350-PAC <br> ) MDL No. 2013 <br> ) <br> ) |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND CASE <u>CONTRIBUTION AWARDS TO THE PLAINTIFFS</u>

| **KESSLER TOPAZ** <br> **MELTZER & CHECK, LLP** <br> Edward W. Ciolko <br> Donna Siegel Moffa <br> Mark K. Gyandoh <br> Julie Siebert-Johnson <br> 280 King of Prussia Road <br> Radnor, PA 19087 <br><br> Co-Lead Class Counsel | **HARWOOD FEFFER LLP** <br> Robert I. Harwood <br> Samuel Rosen <br> Daniella Quitt <br> Tanya Korkhov <br> 488 Madison Avenue <br> New York, NY  10022 <br><br><br> Co-Lead Class Counsel |

<u>TABLE OF CONTENTS</u>

<u>**Page**</u>

TABLE OF AUTHORITIES ................................................................................................. iii

I. INTRODUCTION .......................................................................................................1

II. SUMMARY OF LITIGATION EFFORTS.................................................................2

III. THE REQUESTED ATTORNEYS' FEE AWARD IS REASONABLE
AND FAIR ....................................................................................................................5

    A. Governing Standards ............................................................................................6

    B. The *Goldberger* Factors Confirm the Reasonableness
        of the Fee Request ................................................................................................8

        1. The Time and Labor Expended by Counsel ..................................................8

        2. The Magnitude and Complexity of the Litigation .......................................9

        3. The Risks of the Litigation .........................................................................11

        4. The Quality of the Representation ..............................................................13

        5. The Award Requested in Relation to the Settlement Amount.................... 14

        6. Public Policy Considerations ......................................................................16

    C. The Reaction of the Settlement Class to the Fee Request
        Provides Powerful Evidence that the Requested Fee
        is Fair and Reasonable .......................................................................................17

    D. A Lodestar Cross-Check Confirms the Reasonableness
        of the Requested Fee..........................................................................................18

        1. The number of hours is reasonable ............................................................18

        2. Co-Lead Class Counsel's billing rates are reasonable ..............................19

        3. The "fractional" multiplier also renders the
          requested fee reasonable ...........................................................................20

IV.   THE COURT SHOULD REIMBURSE CO-LEAD CLASS COUNSEL
      FOR EXPENSES INCURRED IN CONNECTION WITH
      THIS LITIGATION .......................................................................................................20

V.    THE REQUESTED NAMED PLAINTIFF CASE CONTRIBUTION
      AWARDS ARE FAIR AND REASONABLE ..................................................................22

VI.   CONCLUSION .............................................................................................................23

## **TABLE OF AUTHORITIES**

**Cases** **Page**

*Amara v. CIGNA Corp.*,
   534 F. Supp. 2d 288 (D. Conn. 2008) ................................................................. 10

*Bellifemine v. Sanofi-Aventis, U.S., LLC*,
   No. 07-cv-2207,
   2010 U.S. Dist. LEXIS 79679 (S.D.N.Y. Aug. 6, 2010) ........................................ 22

*Bd. of Tr. of the AFTRA Ret. Fund v. JPMorgan Chase Bank*,
   No. 09-cv-686,
   2012 U.S. Dist. LEXIS 79418 (S.D.N.Y. June 7, 2012) .................................. 18, 23

*Boeing Co. v. Van Gemert*,
   444 U.S. 472 (1980) ................................................................................................. 6

*Brieger v. Tellabs, Inc.*,
   659 F. Supp. 2d 967 (N.D. Ill. 2009) ..................................................................... 12

*Carlson v. Xerox Corp.*,
   596 F. Supp. 2d 400 (D. Conn. 2009) .................................................................... 14

*Castagna v. Madison Square Garden, L.P.*,
   No. 09-cv-10211,
   2011 U.S. Dist. LEXIS 64218 (S.D.N.Y. June 7, 2011) ......................................... 6

*City of Providence v. Aeropostale, Inc.*,
   No. 11-cv-7132,
   2014 U.S. Dist. LEXIS 64517 (S.D.N.Y. May 9, 2014) .................................. *passim*

*Coppess v. Healthways, Inc.*,
   No. 10-cv-109 (M.D. Tenn. Apr. 25, 2011) ........................................................... 15

*DiFelice v. U.S. Airways, Inc.*,
   436 F. Supp. 2d 756 (E.D. Va. 2006) ..................................................................... 12

*Eslava v. Gulf Tel. Co.*,
   No. 04-cv-297 (D. Ala. Nov. 16, 2007) .................................................................. 15

*Fifth Third Bancorp v. Dudenhoeffer*,
   134 S. Ct. 2459 (2014) ..................................................................................... 10, 11

*Goldberger v. Integrated Res., Inc.*,
   209 F.3d 43 (2d Cir. 2000) ............................................................................. *passim*

iii

*Graden v. Conexant Sys., Inc.*,
No. 05-cv-695 (D.N.J. Sept. 11, 2009) ...................................................... 15

*Griffin v. Flagstar Bancorp. Inc.*,
   No. 10-cv-10610,
   2013 U.S. Dist. LEXIS 173702 (E.D. Mich. Dec. 12, 2013) ..................................... 23

*In re AMF Bowling Sec. Litig.*,
   334 F. Supp. 2d 462 (S.D.N.Y. 2004) ....................................................... 16

*In re Aquila ERISA Litig.*,
   No. 04-cv-865 (W.D. Mo. Nov. 29, 2007) .................................................... 15

*In re Elan Sec. Litig.*,
   385 F. Supp. 2d 363 (S.D.N.Y. 2005) ......................................................... 8

*In re Elec. Data Sys. Corp. ERISA Litig.*,
   No. 03-cv-126 (E.D. Tex. Aug. 6, 2008) ..................................................... 15

*In re Fannie Mae 2008 Securities Litigation*,
   No. 08-cv-7831-PAC (S.D.N.Y.) ........................................................... 13

*In re Global Crossing Sec. & ERISA Litig.*,
   225 F.R.D. 436 (S.D.N.Y. 2004).......................................................... 10, 21

*In re Radioshack Corp. "ERISA" Litig.*,
   No. 08-cv-1875 (N.D. Tex. Feb. 8, 2011) ................................................... 15

*In re Marsh ERISA Litig.*,
   265 F.R.D. 128 (S.D.N.Y. 2010)...................................................... *passim*

*In re MBNA Corp. ERISA Litig.*,
   No. 05-cv-429 (D. Del. Mar. 27, 2009)...................................................... 15

*In re Merck & Co. Vytorin ERISA Litig.*,
   No. 08-cv-285,
   2010 U.S. Dist. LEXIS 12344 (D.N.J. Feb. 9, 2010).......................................... 15, 19

*In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*,
   246 F.R.D. 156 (S.D.N.Y. 2007) ............................................................ 21

*In re Merrill Lynch Tyco Research Sec. Litig.*,
   249 F.R.D. 124 (S.D.N.Y. 2008)......................................................... 11, 13

*In re NASDAQ Market-Makers Antitrust Litig.*,
   187 F.R.D. 465 (S.D.N.Y. 1998)............................................................ 20

iv

*In re Nuvelo, Inc. Sec. Litig.*,
  No. 07-cv-4056,
  2011 U.S. Dist. LEXIS 72260 (N.D. Cal. July 6, 2011) ........................................................ 18

*In re Prudential Sec. Inc. Ltd. P'ships Litig.*,
  985 F. Supp. 410 (S.D.N.Y. 1997) ...................................................................................... 17

*In re Rite Aid Corp. Sec. Litig.*,
  396 F.3d 294 (3d Cir. 2005) ............................................................................................... 18

*In re Schering-Plough Corp. Enhance ERISA Litig.*,
  No. 08-cv-1432,
  2012 U.S. Dist. LEXIS 75213 (D.N.J. May 31, 2012) ................................................... 15, 23

*In re Syncor ERISA Litig.*,
  No. 03-cv-2446 (C.D. Cal. Mar. 30, 2009) .......................................................................... 15

*In re Veeco Instruments Inc. Sec. Litig.*,
  No. 05-md-1695,
  2007 U.S. Dist. LEXIS 85554 (S.D.N.Y. Nov. 7, 2007) ................................................. 20-21

*In re Visa Check/Mastermoney Antitrust Litig.*,
  297 F. Supp. 2d 503 (E.D.N.Y. 2003) .................................................................................. 17

*Johnson v. Brennan*,
  No. 10-cv-4712,
  2011 U.S. Dist. LEXIS 105775 (S.D.N.Y. Sept. 16, 2011) ........................................ 9, 18, 20

*Landgraff v. Columbia/HCA Healthcare Corp.*,
  No. 98-cv-90,
  2000 U.S. Dist. LEXIS 21831 (M.D. Tenn. May 24, 2000) .................................................. 12

*LeBlanc-Sternberg v. Fletcher*,
  143 F.3d 748 (2d Cir. 1998) ............................................................................................... 19

*Luciano v. Olsten Corp.*,
  109 F.3d 111 (2d Cir. 1997) ............................................................................................... 19

*Maley v. Del Global Techs. Corp.*,
  186 F. Supp. 2d 358 (S.D.N.Y. 2002) .................................................................................. 17

*Masters v. Wilhelmina Modeling Agency*,
  473 F.3d 423 (2d Cir. 2007) ................................................................................................. 7

*McDaniel v. County of Schenectady*,
  595 F.3d 411 (2d Cir. 2010) ................................................................... 6

*Milliron v. T-Mobile USA, Inc.*,
  No. 08-4149,
  2009 U.S. Dist. LEXIS 101201(D.N.J. Sept. 10, 2009),
  *aff'd*, 423 F. App'x 131 (3d Cir. 2011) ................................................. 15

*Missouri v. Jenkins*,
  491 U.S. 274 (1989) ............................................................................. 19

*Moore v. Comcast Corp.*,
  No. 08-cv-773 (E.D. Pa. Jan. 24, 2011) ............................................... 15

*Morrison v. Moneygram Int'l, Inc.*,
  No. 08-cv-1121 (D. Minn. May 20, 2011) ............................................. 15

*Nelson v. Hodowal (IPALCO)*,
  512 F.3d 347 (7th Cir. 2008) ................................................................ 12

*Reichman v. Bonsignore, Brignati & Mazzotta, P.C.*,
  818 F.2d 278 (2d Cir. 1987) ................................................................. 21

*Rinehart v. Akers*,
  722 F.3d 137 (2d Cir. 2013) ............................................................. 4, 11

*Shapiro v. JPMorgan Chase & Co.*,
  Nos. 11-cv-8331, 11-cv-7961,
  2014 U.S. Dist. LEXIS 37872 (S.D.N.Y. Mar. 21, 2014)................ 18, 20, 21

*Sines v. Serv. Corp. Int'l*,
  No. 03-cv-5465,
  2006 U.S. Dist. LEXIS 25072 (S.D.N.Y. May 1, 2006)......................... 16

*Strougo v. Bassini*,
  258 F. Supp. 2d 254 (S.D.N.Y. 2003) ................................................... 23

*Tibble v. Edison Int'l*,
  135 S. Ct. 1823 (2015) .................................................................... 10, 12

*Velez v. Novartis Pharm. Corp.*,
  No. 04-cv-09194,
  2010 U.S. Dist. LEXIS 125945 (S.D.N.Y. Nov. 30, 2010) ................ 15-16

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
  396 F.3d 96 (2d Cir. 2005) ........................................................ 6, 7, 18-19

**Statutes & Regulations**

Employee Retirement Income Security Act of 1974

29 U.S.C. § 1001, *et seq.* ................................................................................ 1

29 U.S.C. § 1024(b)(4) ..................................................................................... 3

29 U.S.C. § 1132(a) ........................................................................................ 16

**Federal Rules of Civil Procedure**

FED. R. CIV. P. 23(h) ....................................................................................... 21

FED. R. CIV. P. 30(b)(6) .................................................................................... 4

Plaintiffs Mary P. Moore and David Gwyer ("Plaintiffs"), participants in the Federal National Mortgage Association Employee Stock Ownership Plan (the "Plan"), respectfully submit this memorandum of law in support of Plaintiffs' Unopposed Motion For Attorneys' Fees, Reimbursement of Expenses, and Case Contribution Awards to the Plaintiffs.[1]

## I.    INTRODUCTION

On May 5, 2015, this Court preliminarily approved the proposed Settlement in this Action for $9,000,000.[2]   In connection with Plaintiffs' request for final approval of the Settlement, Plaintiffs seek approval of the request for attorneys' fees, reimbursement of expenses, and Case Contribution Awards for the two Plaintiffs, Mary P. Moore and David Gwyer.

Co-Lead Class Counsel, experienced in ERISA-based[3] class actions, understood and accepted the risks inherent in this type of litigation, and obtained a meaningful recovery for the Settlement Class after more than six years of hard-fought litigation.   Despite formidable opposition undertaken by Defendants, Co-Lead Class Counsel were able to sufficiently develop and prosecute the Action, which enabled them to engage in a productive and well-informed settlement process under the auspices of David Geronemus of Judicial Arbitration and Mediation Services, Inc. ("JAMS").[4]   In all, Co-Lead Class Counsel has spent more than 10,000 hours litigating this Action.   As compensation for these substantial efforts, Co-Lead Class Counsel

---

[1]    All capitalized terms not otherwise defined in the instant memorandum shall have the same meaning as ascribed to them in the Settlement Agreement which is attached as Exhibit 1 to the Joint Declaration of Robert I. Harwood and Mark K. Gyandoh in Support of Plaintiffs' Unopposed Motion for Final Approval of Class Action Settlement, Certification of Settlement Class, and Approval of Plan of Allocation and Request for an Award of Attorneys' Fees, Reimbursement of Expenses, and Case Contribution Awards to the Plaintiffs ("Joint Decl." or "Joint Declaration").

[2]    *See* Order Granting Preliminary Approval of Class Action Settlement, Preliminarily Certifying Class for Settlement Purposes, Approving Form and Manner of Class Notice, and Scheduling of a Final Approval Hearing (the "Preliminary Approval Order") (Dkt. No. 153).

[3]     Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, *et seq.*

[4]    Mr. Geronemus' biography available at http://www.jamsadr.com/geronemus/.

respectfully request that the Court award attorneys' fees in the amount of $3 million, representing one-third of the Settlement Amount (the "Fee Request"), and reimbursement of Co-Lead Class Counsel's out-of-pocket expenses incurred in connection with the litigation of this Action in the amount of $261,757.11.  Co-Lead Class Counsel submit that these requests are fully justified by the facts of this case and by the applicable law.

As discussed in greater detail below, the Fee Request is also appropriate in light of the fact that the lodestar "cross-check" yields a "fractional" multiplier of 0.72.  In other words, the requested fee represents a fraction of the actual amount of time expended by Co-Lead Class Counsel in this Action.  Following widespread dissemination of the Settlement terms to Settlement Class Members by both direct mail (the Class Notice) and internet and newspaper publication (the Publication Notice), no objections to the Fee Request have been received to date.[5]  *See* Joint Decl. ¶ 32.

In addition, in light of the willingness of the Plaintiffs to pursue this Action on behalf of the Settlement Class and assist with the litigation, Co-Lead Class Counsel ask that the Court approve Case Contribution Awards in the amount of $5,000 to each of the two Plaintiffs.  These awards will be paid by Fannie Mae's insurer, separately and in addition to the Settlement Amount.

## II.    SUMMARY OF LITIGATION EFFORTS

The facts of this case, including the procedural history of the case, are set forth in the Joint Declaration filed contemporaneously herewith, and in Section II of the Preliminary

---

[5]      As set forth in the Class Notice, the deadline for Settlement Class members to file objections is July 23, 2015.  If any objections to the Fee Request are received after the date of this submission, Co-Lead Class Counsel will address them in a supplemental brief to be filed with the Court on or before August 6, 2015 as required by the Preliminary Approval Order.

Approval Memorandum,[6] as well as the accompanying memorandum of law submitted in support of Plaintiffs' Unopposed Motion for Final Approval of Class Action Settlement, Certification of Settlement Class, and Final Approval of Plan of Allocation ("Final Approval Memorandum").  *See* Final Approval Memorandum, Section II.  These filings are incorporated by reference herein.  In connection with the Fee Request, however, Co-Lead Class Counsel summarize their investigation, litigation, and settlement efforts in this Action herein.

Among some of the steps taken in investigating the merits of the Action, Co-Lead Class Counsel reviewed public records regarding the financial condition of Fannie Mae and the assets held by the Plan, and analyzed relevant case law to determine potential legal claims.  In addition, on December 1, 2008, Co-Lead Class Counsel requested Plan-related documents from Defendants pursuant to ERISA § 104(b)(4), 29 U.S.C. § 1024(b)(4).  Defendants complied with the request on December 22, 2008, producing the operative Plan documents, including trust agreements, summary annual reports for the Plan, Benefit Plans Committee Charters, and Board of Director resolutions.

Once litigation began in earnest, Defendants vigorously contested Plaintiffs' claims. After the filing of the Amended Complaint on March 2, 2012 (Dkt. No. 62), Defendants filed three separate motions to dismiss the Amended Complaint.  *See* Dkt. Nos. 65-70.  Plaintiffs and Co-Lead Class Counsel were up to the task.  Drawing on Co-Lead Class Counsel's wealth of experience in prosecuting "company stock" cases, and up-to-date knowledge of relevant case law, Co-Lead Class Counsel prepared and filed comprehensive responses to the motions to dismiss on May 21, 2012.  *See* Dkt. Nos. 82-86.  Defendants filed their reply papers on June 18,

---

[6]      "Preliminary Approval Memorandum" refers to the Memorandum in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement, Preliminary Certification of Settlement Class, Approval of Class Notice, Approval of Plan of Allocation, and Scheduling of Final Approval Hearing, filed April 17, 2015 (Dkt. No. 147).

2012.  *See* Dkt. Nos. 87-90.  After oral argument, the Court granted in part and denied in part Defendants' motions to dismiss by Opinion and Order dated October 22, 2012.  *See* Dkt. No. 97.

Nearly a year after answering the Amended Complaint, in September 2013, the Fannie Mae Parties moved to reconsider the Court's Opinion and Order in light of the opinion issued by the United States Court of Appeals for the Second Circuit in *Rinehart v. Akers*, 722 F.3d 137 (2d Cir. 2013) ("*Lehman*") (Dkt. Nos. 115-117).  Plaintiffs successfully opposed the motion resulting in the Court denying the motion on April 21, 2014 (Dkt. No. 129).

Discovery in this Action was no less challenging as Co-Lead Class Counsel's discovery efforts were significant.  Among other things, Co-Lead Class Counsel issued a subpoena for documents to the Plan Trustee, Fidelity Management Trust Company on January 23, 2013, and issued a Rule 30(b)(6) Deposition Notice to Defendants for the deposition of representatives from Fannie Mae most knowledgeable about the Plan on April 5, 2013.  Moreover, on May 2, 2013, May 3, 2013, May 8, 2013, and June 11, 2013, Defendants provided Class Counsel with copies of documents produced in the related securities litigation.  These productions contained nearly two million pages of documents.  On June 5, 2013, Class Counsel issued Plaintiffs' First Request for Production of Documents to which Defendants responded on July 5, 2013.  In November 2013, and on several dates from January through July 2014, Defendants produced documents to Class Counsel.  These productions contained hundreds of thousands of pages of documents.  On October 9, 2014, Class Counsel again issued a Rule 30(b)(6) Deposition Notice to Defendants for the deposition of the person(s) most knowledgeable about the Plan and reviewed, analyzed or participated in depositions of key witnesses in the securities litigation.  Discovery was ongoing at the time the Parties agreed to the Settlement.

The Settlement negotiations in this Action were just as intense and challenging as the litigation.  The Parties participated in two separate mediation sessions before Mr. Geronemus, who, as noted above, is a well-respected mediator experienced in ERISA breach of fiduciary duty matters.  The first mediation, which spanned a full day, took place on July 24, 2013.  In advance of that session, the Parties submitted extensive, written, confidential memoranda to Mr. Geronemus.  Co-Lead Class Counsel also consulted with an expert concerning damage calculations.  During the mediation, the Parties made formal presentations and engaged in spirited debate as to critical legal and factual issues concerning liability and damages.  The Parties concluded discussions that day remaining far apart in their respective positions and returned to a litigation posture.  Over a year later, on July 30, 2014, the Parties participated in another mediation session with Mr. Geronemus.  Although this mediation was not immediately successful, the Parties continued discussions and negotiations telephonically, through Mr. Geronemus, which ultimately resulted in the Settlement.

As demonstrated above, throughout the litigation and extensive mediation process, Class Counsel advocated for the Plaintiffs and the Settlement Class, to the fullest extent possible.

## III.   THE REQUESTED ATTORNEYS' FEE AWARD IS REASONABLE AND FAIR

Co-Lead Class Counsel respectfully request that the Court approve the request for attorneys' fees and reimbursement for expenses.  Co-Lead Class Counsel seek $3 million in attorneys' fees, which is one-third of the Settlement Amount.  This amount would compensate for total billable hours of 10,735.85.  *See* Joint Decl. ¶ 48.[7]  Based on current billing rates, Co-Lead Class Counsel's combined lodestar is $4,164,172.50.  *Id.*  The fee sought here would thus

---

[7]    These hours do not include any of the time Co-Lead Class Counsel have spent preparing this fee application, finalizing the motion for final approval of the Settlement, preparing for the August 13, 2015 Final Approval Hearing, or any of the post-approval work that will be required to ensure that the Settlement is fully effectuated pursuant to the terms of the Settlement Agreement and the Court-approved Plan of Allocation.  Class Counsel estimates that these additional efforts will require tens of hours of additional attorney and paralegal time.

result in a fractional multiplier of 0.72.   Co-Lead Class Counsel also seek reimbursement of litigation-related expenses of $261,757.11.   These expenses were primarily incurred in connection with the maintenance of the discovery data base, court reporter fees, expert fees, and mediation fees.   *See* Joint Decl. ¶¶ 55-56.

### A.   Governing Standards

"When attorneys create a settlement fund for the common benefit of members of a class, 'the attorneys whose efforts created the fund are entitled to a reasonable fee – set by the court – to be taken from the fund.'"   *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 146 (S.D.N.Y. 2010) (quoting *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 47 (2d Cir. 2000)).   *See also City of Providence v. Aeropostale, Inc.*, No. 11-cv-7132, 2014 U.S. Dist. LEXIS 64517, at *30 (S.D.N.Y. May 9, 2014) ("Attorneys who achieve a benefit for class members in the form of a 'common fund' are entitled to be compensated for their services from that settlement fund.") (citing *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ("a litigant or lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole")).

In calculating a reasonable attorneys' fee, this Court has discretion to choose between "either the percentage of fund method or the lodestar method."   *Castagna v. Madison Square Garden, L.P.*, No. 09-cv-10211, 2011 U.S. Dist. LEXIS 64218, at *25 (S.D.N.Y. June 7, 2011) (citing *McDaniel v. County of Schenectady*, 595 F.3d 411, 417-18 (2d Cir. 2010)).   However, "[t]he trend in this Circuit is toward the percentage method, which directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation."   *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 121 (2d Cir. 2005) (citations omitted); *see also In re Marsh ERISA Litig.*, 265 F.R.D. at 146 (noting "[a]

6

district court has discretion to use either method, although the trend in this Circuit is towards the percentage method"); *City of Providence*, 2014 U.S. Dist. LEXIS 64517, at *32 ("The trend among district courts in the Second Circuit is to award fees using the percentage method.") (collecting cases).

"Regardless of which method is used, several factors identified by the Second Circuit in *Goldberger* (the '*Goldberger* factors'),[8] discussed below, ultimately determine what is a reasonable fee." *In re Marsh ERISA Litig.*, 265 F.R.D. at 146 (citing *Masters v. Wilhelmina Modeling Agency*, 473 F.3d 423, 436 (2d Cir. 2007)).   As the *Goldberger* Court noted, an analysis of the factors is "based on scrutiny of the unique circumstances of each case . . . ." *Goldberger*, 209 F.3d at 47, 51-53.

Under the lodestar method, the Court scrutinizes the fee petition to ascertain the number of hours reasonably billed by plaintiff's counsel and multiplies that figure by an appropriate hourly rate and a multiplier, also determined by reference to the traditional factors.   *See Wal-Mart Stores*, 396 F.3d at 122 (internal quotations and citation omitted).   However, as the Second Circuit recently recognized, the lodestar method is disfavored because the "lodestar create[s] an unanticipated disincentive to early settlements, tempt[s] lawyers to run up their hours, and compel[s] district courts to engage in a gimlet-eyed review of line-item fee audits." *Id.* (citation omitted).

Co-Lead Class Counsel respectfully submit that the Court should award attorneys' fees based on a percentage of the common fund obtained for the Settlement Class.   As the analysis below demonstrates, the Fee Request is reasonable and appropriate and should be approved by the Court in full.   Regardless of methodology, in determining a reasonable award of attorneys'

---

[8]      The *Goldberger* factors include:  (1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations.  *Goldberger*, 209 F.3d at 50.

fees, the court seeks to balance the "overarching concern for moderation with the concern for avoiding disincentives to early settlements." *In re Elan Sec. Litig.*, 385 F. Supp. 2d 363, 376 (S.D.N.Y. 2005) (citations and internal quotations omitted).

**B.      The *Goldberger* Factors Confirm the Reasonableness of the Fee Request**

**1.      The Time and Labor Expended by Counsel**

The first of the *Goldberger* factors in determining a reasonable common fund percentage fee requires consideration of the time and labor expended by counsel.  *See Goldberger*, 209 F.3d at 50.  This factor weighs in favor of granting Class Counsel's request because Co-Lead Class Counsel have expended significant time and labor in prosecuting Plaintiffs' claims.

Co-Lead Class Counsel have devoted considerable resources and time in the research, investigation, prosecution, and resolution of this action as summarized above in Section II.  Co-Lead Class Counsel vigorously litigated this action for more than six years, and then tenaciously negotiated the terms of the Settlement, which was only reached after two formal mediations before Mr. Geronemus.  As set forth above, the two mediations took place over a year apart. Prior to the mediations (and Settlement), Co-Lead Class Counsel thoroughly investigated the factual and legal basis for asserting the claims in the initial complaints, filed the Complaint and Amended Complaint, conducted targeted written discovery, including serving several third-party subpoenas, worked intensively with an expert in analyzing the data, sifted through hundreds of highly complicated Plan and Plan-related documents, and briefed and argued the motions to dismiss and subsequent motion for reconsideration.  *See* Joint Decl. ¶¶ 17-21.  Further, in anticipation of the two mediations, Co-Lead Class Counsel prepared detailed mediation statements supporting Plaintiffs' contentions and disputed issues of liability and damages.  The court in the analogous *In re Marsh ERISA Litig.* action referenced very similar facts and

circumstances in analyzing the counsel's time and labor expended, noting "this is a complex case both legally and factually, and Plaintiffs' Counsel have dedicated an enormous amount of time and labor to prosecuting this case since it was filed more than five years ago" and went on to conclude that the *Goldberger* factor thus "support[ed] the requested fee."  *In re Marsh ERISA Litig.*, 265 F.R.D. at 148.  Plaintiffs respectfully submit that the same conclusion is warranted here.  Moreover, all of Co-Lead Class Counsel's efforts were undertaken despite the risk that Plaintiffs would not prevail in this Action, and that Co-Lead Class Counsel would therefore receive nothing for their efforts.  This contingency basis further supports the Fee Request.  *See, e.g.*, *City of Providence*, 2014 U.S. Dist. LEXIS 64517, at *39 ("The Second Circuit has recognized that the risk associated with a case undertaken on a contingent basis is an important factor in determining an appropriate fee award.").  In addition, Co-Lead Class Counsel will continue to incur additional time and expend resources in overseeing the administration of the Settlement and in responding to inquiries and issues from members of the Class.  *See Johnson v. Brennan*, No. 10-cv-4712, 2011 U.S. Dist. LEXIS 105775, at *47 (S.D.N.Y. Sept. 16, 2011) (recognizing that "the requested fees are not based solely on time and effort already expended; they are also meant to compensate Class Counsel for time that will be spent administering the settlement in the future").  This *Goldberger* factor is satisfied.

## 2.    The Magnitude and Complexity of the Litigation

The second Goldberger factor requires consideration of the complexities and magnitude of the litigation.  *See Goldberger*, 209 F.3d at 50.  Here, the scope and complexity of this case also weigh in favor of the Court approving the requested award.

Any attorney who intends to successfully prosecute any class-wide, statutorily-based claim for pension benefits must have a command of significant portions of ERISA, regulations

9

and regulatory guidance issued by the Department of the Treasury, the Internal Revenue Service, and the Department of Labor and their interrelationships.  *See Amara v. CIGNA Corp.*, 534 F. Supp. 2d 288, 296 (D. Conn. 2008) (observing that "ERISA, and the regulations under it, are often lamentably obscure – to describe them as a tangled web does not do them justice"). Moreover, ERISA jurisprudence is "a rapidly developing, and somewhat esoteric, area of law." *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 456, 459 n.13 (S.D.N.Y. 2004).  *See also In re Marsh ERISA Litig.*, 265 F.R.D. at 147 ("ERISA is a relatively new statute (1974), and the laws creating 401(k) plans are even newer (1981). … In short, ERISA litigation has nothing like the mature body of law and practice present in the securities and antitrust fields. … ERISA law is still developing.").  Indeed, as discussed in the Final Approval Memorandum, new precedents are impacting the legal landscape in significant ways presenting unique challenges for ERISA litigators.  The United States Supreme Court's recent decision in *Fifth Third Bancorp v. Dudenhoeffer*, 134 S. Ct. 2459 (2014) essentially rewrote the law that had existed for the last twenty years while leaving it to the lower courts to chart new waters in interpreting and applying the decision.  *Id.* at 2473.  Just last month, the Supreme Court reversed a Ninth Circuit ruling concerning ongoing duties, under ERISA, to monitor the prudence of investments in a 401(k) Plan, resulting in more changes to the law.  *Tibble v. Edison Int'l*, 135 S. Ct. 1823, 1825 (2015).

Accordingly, even for counsel experienced in these matters, ERISA litigation presents a labyrinth of issues.  This Action is no exception.  It hinges on numerous complex, legal, and factual issues under ERISA which require comprehensive evidentiary support and testimony. *See* Final Approval Memorandum, III.B.  The magnitude and complexity of this action is borne out by the time and effort Co-Lead Class Counsel put into litigating the case for over six years

and negotiating the terms of the proposed Settlement outlined herein.  These facts all support the reasonableness of the requested fee.

### 3.    The Risks of the Litigation

The risk of the litigation is "perhaps the foremost factor to be considered in determining whether to award an enhancement."  *Goldberger*, 209 F.3d at 54 (internal citations and quotations omitted); *In re Marsh ERISA Litig.*, 265 F.R.D. at 147 ("the Second Circuit [in *Goldberger*] has identified the risk of success as perhaps the foremost factor to be considered in determining a reasonable award of attorneys' fees").  The risk undertaken by Co-Lead Class Counsel is measured by, among other things, the presence of government action preceding the suit, the ease of proving claims and damages, and, if the case resulted in settlement, the relative speed at which the case was settled.  *See In re Merrill Lynch Tyco Research Sec. Litig.*, 249 F.R.D. 124, 139-40 (S.D.N.Y. 2008).  Consideration of these factors here confirms that Co-Lead Class accepted considerable risk in pursuing this Action.

*First*, while there were significant disclosures resulting from investigation of Fannie Mae by the United States Government, the information so derived was in no way dispositive of Plaintiffs' ERISA claims, as the focus was very different.  As such, the burden and risk faced by Co-Lead Class Counsel remained substantial.

*Second*, given the ever-changing landscape of ERISA law (*see* discussion of *Goldberger* second factor in Section III.B.2, *supra*), Co-Lead Class Counsel faced real risks in establishing liability and damages from the outset of the litigation.[9]  Indeed, as mentioned above, this area of the law is rapidly developing as evidenced by the Supreme Court decisions in *Fifth Third* and

---

[9]    For example, the decision in *Rinehart v. Akers*, 722 F.3d 137 (2d Cir. 2013), led Defendants to seek to re-open the decision denying Defendants' motions to dismiss.  While the Court rejected that contention, Defendants' motion reflects ERISA law's constantly shifting sands.

*Tibble*.  Thus, although Plaintiffs are confident in their claims, there is considerable risk that their claims could be defeated in their entirety.

Similarly, there is considerable risk with respect to the damages issue, in particular that Plaintiffs might receive less as a result of a judgment than is provided for by the Settlement, especially given that to the best of Co-Lead Class Counsel's knowledge, only four similar "company stock" ERISA class actions have gone to trial, and in each instance, the defendants prevailed.  *See Brieger v. Tellabs, Inc.*, 659 F. Supp. 2d 967 (N.D. Ill. 2009); *Nelson v. Hodowal (IPALCO)*, 512 F.3d 347 (7th Cir. 2008); *DiFelice v. U.S. Airways, Inc.*, 436 F. Supp. 2d 756 (E.D. Va. 2006); *Landgraff v. Columbia/HCA Healthcare Corp.*, No. 98-cv-90, 2000 U.S. Dist. LEXIS 21831 (M.D. Tenn. May 24, 2000).  Defendants have taken the position and certainly would continue to argue that if Fannie Mae Stock ever became imprudent, it was not until just before Fannie Mae was placed into conservatorship in September 2008.  If Defendants' argument had prevailed, Plaintiffs' damages would have been significantly less given that Fannie Mae Stock had already declined drastically by that date (*i.e.*, Fannie Mae Stock closed at $0.73 the next trading day after being placed into conservatorship).  Thus, there is no assurance Plaintiffs would prevail if litigation were to continue, much less that they would recover more than $9,000,000, or that there would be available insurance coverage to satisfy any award.

*Third*, Settlement talks were contentious and proceeded for more than a year, with no assurance there would ever be a meeting of the minds.  As this Court is aware from the hearing which took place in connection with the preliminary approval of this Settlement, Defendant Mudd still maintains that no wrongdoing took place.  *See* Dkt. No. 155 at 16-19.  Given the fact that the Plan had been terminated since 2010, it took many months to iron out the details of the Settlement to ensure that there was a mechanism for timely and efficient payment to the

Settlement Class.  Closure, leading to a favorable result for Plan participants, was only obtained because Co-Lead Class Counsel pushed hard to finalize the Settlement.  This *Goldberger* factor is thus satisfied.  *See, e.g.*, *In re Marsh ERISA Litig.*, 265 F.R.D. at 148 ("In sum, the risk for Plaintiffs' Counsel in this ERISA company stock case was significant.").

Being able to present such a favorable Settlement despite these risks tends to support an award of fees in the amount requested.  As this Court is aware, compared to most securities fraud cases, there are only a handful of law firms throughout the Country that pursue ERISA cases such as the one before the Court.  For example, there were more than 18 complaints filed in the related securities class action and multiple motions for lead counsel.  *See In re Fannie Mae 2008 Securities Litigation*, 08-cv-7831 (PAC).  That Co-Lead Class Counsel took those risks is deserving of recognition in the fee awarded.

### 4.    The Quality of the Representation

The fourth factor is the "quality of representation" delivered in the litigation which is best measured by results achieved.  *Goldberger*, 209 F.3d at 50.  As detailed in the Final Approval Memorandum, the cash Settlement represents a substantial recovery to the Settlement Class, especially when viewed in relation to the complexities, magnitude, and risks faced by the Plaintiffs here.

The nature of the opposition faced by counsel also should be considered in assessing the quality of Co-Lead Class Counsel's performance in determining an award of fees.  *In re Merrill Lynch Tyco*, 249 F.R.D. at 141; *City of Providence*, 2014 U.S. Dist. LEXIS 64517, at *48 ("The quality of opposing counsel is also important in evaluating the quality of Lead Counsel's work.").  Here, the caliber of opposing counsel, O'Melveny & Myers, LLP, was clearly of the highest order and required that whatever firm represented Plaintiffs and the Class be capable of

providing comparable services.  Indeed, the court in the analogous *In re Marsh ERISA Litigation* specifically recognized O'Melveny & Myers as "an unquestioned national leader in ERISA fiduciary breach litigation" and reasoned "[t]he high quality of defense counsel opposing Plaintiffs' efforts further proves the caliber of representation that was necessary to achieve the Settlement."  265 F.R.D. at 148.  In finding this *Goldberger* factor satisfied, the court went on to conclude, "[t]he ability of Plaintiffs' Counsel to obtain a favorable settlement for the Class in the face of such formidable legal opposition confirms the quality of their representation of the Class."  *Id.*  Co-Lead Class Counsel respectfully submit that the same conclusion is warranted here.  Without the experience, skill, and determination displayed by Co-Lead Class Counsel during the prosecution of this action, as well as the hard-fought settlement negotiations with the Fannie Mae Parties, such a favorable recovery for the Settlement Class would not have been attained.  The ability of Co-Lead Class Counsel to obtain a substantial recovery for the Class in the face of such formidable legal opposition reflects the superior quality of work and strongly favors the requested attorneys' fees.  *See, e.g.*, *Carlson v. Xerox Corp.*, 596 F. Supp. 2d 400, 412 (D. Conn. 2009) (approving fee request where "the Class received high legal representation and obtained a very large settlement in the face of vigorous opposition by highly experienced and skilled defense counsel").

### 5.    The Award Requested in Relation to the Settlement Amount

The fifth factor for determining the appropriate percentage fee award in class actions is the "requested fee in relation to the settlement," *i.e.*, whether the requested fee represents a fair percentage of the settlement achieved.  *Goldberger*, 209 F.3d at 50 (citation omitted).  This factor also supports the requested attorneys' fee award.

The Fee Request, representing one-third of the total $9 million Settlement Amount, is well within the range of fees commonly awarded in other ERISA class action settlements in this and other Circuits and would not constitute a windfall.  *See, e.g., In re Marsh ERISA Litig.*, 265 F.R.D. at 149 (approving one-third request, finding "[i]t is fair and reasonable in relation to the recovery and compares favorably to fee awards in other risky common fund cases in this Circuit and elsewhere"); *In re Schering-Plough Corp. Enhance ERISA Litig.*, No. 08-cv-1432, 2012 U.S. Dist. LEXIS 75213 (D.N.J. May 31, 2012) (one-third of common fund); *Morrison v. Moneygram Int'l, Inc.*, No. 08-cv-1121 (D. Minn. May 20, 2011)  (one-third); *Coppess v. Healthways, Inc.*, No. 10-cv-109 (M.D. Tenn. Apr. 25, 2011)  (33.3%); *In re Radioshack Corp. "ERISA" Litig.*, No. 08-cv-1875 (N.D. Tex. Feb. 8, 2011)  (33.3%); *Moore v. Comcast Corp.*, No. 08-cv-773 (E.D. Pa. Jan. 24, 2011)  (awarding 33% fee); *In re Merck & Co. Vytorin ERISA Litig.*, No. 08-cv-285, 2010 U.S. Dist. LEXIS 12344, at **34-42 (D.N.J. Feb. 9, 2010) (awarding 33.3% fee); *Graden v. Conexant Sys., Inc.*, No. 05-cv-695 (D.N.J. Sept. 11, 2009) (33% fee); *Milliron v. T-Mobile USA, Inc.*, No. 08-cv-4149, 2009 U.S. Dist. LEXIS 101201, at *24 (D.N.J. Sept. 10, 2009), *aff'd*, 423 F. App'x 131 (3d Cir. 2011) (awarding 33.3% fee); *In re Syncor ERISA Litig.*, No. 03-cv-2446 (C.D. Cal. Mar. 30, 2009)  (33.3%)*; In re MBNA Corp. ERISA Litig.*, No. 05-cv-429 (D. Del. Mar. 27, 2009) (33%); *In re Elec. Data Sys. Corp. ERISA Litig.*, No. 03-cv-126 (E.D. Tex. Aug. 6, 2008) (33.3%); *Eslava v. Gulf Tel. Co.*, No. 04-cv-297 (D. Ala. Nov. 16, 2007) (35%); *In re Aquila ERISA Litig.*, No. 04-cv-865 (W.D. Mo. Nov. 29, 2007) (33%).

Indeed, "federal courts have established that a standard fee in complex class action cases like this one, where plaintiffs [*sic*] counsel have achieved a good recovery for the class, ranges from 20 to 50 percent of the gross settlement benefit."  *See Velez v. Novartis Pharm. Corp.*, No. 04-cv-09194, 2010 U.S. Dist. LEXIS 125945, at **58-59 (S.D.N.Y. Nov. 30, 2010) (collecting

15

cases).  Further, as the *In re Marsh ERISA Litig.* court specifically recognized, "[c]ourts have also awarded percentage fees of one-third or higher in ERISA company stock cases . . . .").  265 F.R.D. at 149.  Given the outstanding result Co-Lead Class Counsel achieved for the Settlement Class, the Fee Request is fair and reasonable.

### 6.   Public Policy Considerations

The Second Circuit has also noted that "public policy considerations" should be considered in determining the fee awarded to plaintiffs' counsel in class actions.  *Goldberger*, 209 F.3d at 50.  In this Action, the public policy considerations strongly support the Fee Request.  Obviously, protecting workers' retirement funds is of genuine public interest.   Private enforcement of the pension laws is a necessary adjunct to government intervention because the Department of Labor lacks the resources to police even a small fraction of plans across the country.  As the *In re Marsh ERISA Litigation* court noted in its analysis of this *Goldberger* factor, "Congress passed ERISA to promote the important goals of protecting and preserving the retirement savings of American workers.   The ERISA statute itself specifically encourages private enforcement.  *See, e.g.*, ERISA § 502(a), 29 U.S.C. § 1132(a)."  *In re Marsh ERISA Litig.*, 265 F.R.D. at 149-50.   That is why it is critical that remuneration in successful enforcement actions like this one is both fair and rewarding – to make certain that injured parties are represented by counsel capable of effectively fighting for their rights.  *See, e.g.*, *In re AMF Bowling Sec. Litig.*, 334 F. Supp. 2d 462, 468 (S.D.N.Y. 2004) (recognizing "the need to encourage [counsel for] plaintiffs to undertake worthy cases that vindicate the rights of injured [parties]"); *Sines v. Serv. Corp. Int'l*, No. 03-cv-5465, 2006 U.S. Dist. LEXIS 25072, at *3 (S.D.N.Y. May 1, 2006) (counsel [should] receive full and fair compensation for their work lest an inadequate award serve as a disincentive to filing meritorious suits in the future").

16

A fee award commensurate with the risks run and the results achieved in successful cases like this one will help ensure that attorneys are willing to represent employees in these cases, thereby promoting private enforcement of, and compliance with ERISA.  *See, e.g.*, *In re Visa Check/Mastermoney Antitrust Litig.*, 297 F. Supp. 2d 503, 524 (E.D.N.Y. 2003) ("The fees awarded must be reasonable, but they must also serve as an inducement for lawyers to make similar efforts in the future."); *City of Providence*, 2014 U.S. Dist. LEXIS 64517, at **51-52 ("Lawsuits such as this one can only be maintained if competent counsel can be retained to prosecute them.  This will occur if courts award reasonable and adequate compensation for such services where successful results are achieved.  Public policy therefore supports awarding Lead Counsel's reasonable attorneys' fee request.").

### C.     The Reaction of the Settlement Class to the Fee Request Provides Powerful Evidence that the Requested Fee is Fair and Reasonable

The reaction of the Settlement Class Members, which has thus far been uniformly positive, also supports the requested fee.  *See, e.g.*, *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 985 F. Supp. 410, 416 (S.D.N.Y. 1997) ("In determining the reasonableness of a requested fee, numerous courts have recognized that 'the lack of objection from members of the class is one of the most important reasons.'") (citation omitted); *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 374 (S.D.N.Y. 2002) ("The reaction by members of the Class is entitled to great weight by the Court.").  This factor will be re-evaluated after the deadline for objections has run, but the lack of objections to Co-Lead Class Counsel's fee application to date suggests the requested fee is fair.  The Class Notice mailed to 9,949 Settlement Class Members, published in *PR Newswire* and in *The Washington Post* informed the Class of the proposed Settlement and the amount of attorneys' fees Co-Lead Class Counsel would seek as well as the procedure by which an individual Class member could object to the fee requested by Co-Lead Class Counsel.

The fact that, as of the date of this filing, not a single objection to Co-Lead Class Counsel's Fee and Expense requests has been received is noteworthy. *See* Joint Decl. ¶ 32; *see also In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 305 (3d Cir. 2005) (finding that "such a low level of objection[s] is a rare phenomenon"); *In re Nuvelo, Inc. Sec. Litig.*, No. 07-cv-4056, 2011 U.S. Dist. LEXIS 72260, at \*\*9-10 (N.D. Cal. July 6, 2011) (where only one class member objected to the fee request, the court found this "a strong, positive response from the class, supporting an upward adjustment" of the fee award). The absence of any objections to date strongly supports the Fee Request.

### D. A Lodestar Cross-Check Confirms the Reasonableness of the Requested Fee

"Following *Goldberger*, the trend in the Second Circuit has been to apply the percentage method and loosely use the lodestar method as a 'baseline' or 'cross check.'" *Johnson v. Brennan*, 2011 U.S. Dist. LEXIS 105775, at \*\*57-58 (citing *Goldberger*, 209 F.3d at 50).[10] *See also Bd. of Tr. of the AFTRA Ret. Fund v. JPMorgan Chase Bank*, No. 09-cv-686, 2012 U.S. Dist. LEXIS 79418, at \*4 (S.D.N.Y. June 7, 2012) (noting "the lodestar is often used as a cross-check"). Where the lodestar is "used as a mere cross-check, the hours documented by counsel need not be exhaustively scrutinized by the district court." *Id.* "Instead, 'the reasonableness of the claimed lodestar can be tested by the court's familiarity with the case.'" *Shapiro v. JPMorgan Chase & Co.*, Nos. 11-cv-8331, 11-cv-7961, 2014 U.S. Dist. LEXIS 37872, at \*83 (S.D.N.Y. Mar. 21, 2014) (quoting *Goldberger*, 209 F.3d at 50).

#### 1. The number of hours is reasonable

The starting point of a lodestar analysis is determining counsel's lodestar by "multipl[ying] hours reasonably expended against a reasonable hourly rate." *Wal-Mart*, 396

---

[10]    While the Second Circuit encourages the use of the lodestar method as a "cross-check," it has acknowledged that the lodestar method utilized on its own may "prove[] vexing" and result in "an inevitable waste of judicial resources." *Goldberger*, 209 F.3d at 48-50.

F.3d at 121.  As set forth above, the total number of hours billed by Co-Lead Class Counsel is more than 10,000 hours.  Plaintiffs submit that the amount of time Co-Lead Class Counsel have expended is appropriate and reasonable in the light of scope and complexity of this case as discussed herein.  *See* Joint Decl. ¶¶ 53-54.

2.    **Co-Lead Class Counsel's billing rates are reasonable**

The second step in the lodestar cross-check analysis is to evaluate the reasonableness of the current billing rates charged by counsel.  The Second Circuit in *Goldberger* noted that the overall goal of the fee-setting process is to replicate the rate that counsel would be paid in a perfect market.  209 F.3d at 52 ("market rates, where available, are the ideal proxy for their compensation").  The use of current rates to calculate the lodestar figure has been repeatedly endorsed by courts as a means of accounting for the delay in payment inherent in class actions and for inflation.  *See, e.g.*, *Missouri v. Jenkins*, 491 U.S. 274, 283-84 (1989); *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 764 (2d Cir. 1998).

The governing standard is the prevailing rate for the relevant type of legal work in the community where the services were performed.  *See, e.g.*, *Luciano v. Olsten Corp.*, 109 F.3d 111, 115-16 (2d Cir. 1997).  Perhaps the best indicators of the "market rates" in New York for class counsel in class actions are the rates charged by New York firms that defend class actions on a regular basis.  Those rates run as high as $800 per hour or more for comparable experience.[11]  The rates charged by Co-Lead Class Counsel and their firms' staff here are thus well in-line and appropriate here.  *See, e.g.*, *In re Merck & Co. Vytorin ERISA Litig.*, 2010 U.S. Dist. LEXIS 12344, at *45 (approving rates between $250-$850 per hour). Thus, a market check and substantial precedent demonstrate that Class Counsel's rates are reasonable.

---

[11]    *See* http://www.nationallawjournal.com/id=1202636785489.

19

### 3.    The "fractional" multiplier also renders the requested fee reasonable

Courts have continually recognized that, in instances where a lodestar analysis is employed to calculate attorneys' fees or used as a "cross-check" for a percentage of recovery analysis, counsel may be entitled to a "multiplier" of their lodestar rate to compensate them for the risk assumed by them, the quality of their work, and the result achieved for the class.  *See, e.g.*, *Goldberger*, 209 F.3d at 54; *Shapiro*, 2014 U.S. Dist. LEXIS 37872, at **83-84 ("[u]nder the lodestar method, a positive multiplier is typically applied to the lodestar in recognition of the risk of the litigation, the complexity of the issues, the contingent nature of the engagement, the skill of the attorneys, and other factors") (citations and internal quote marks omitted).  Co-Lead Class Counsel have collectively spent over 10,000 hours in connection with this litigation, resulting in a total lodestar of $4.1 million.  The requested attorneys' fees will thus result in a multiplier less than 1.  Given that "[c]ourts regularly award lodestar multipliers from two to six times lodestar," the lodestar cross-check underscores the reasonableness of the Fee Request. *Johnson*, 2011 U.S. Dist. LEXIS 105775, at *58; *Shapiro*, 2014 U.S. Dist. LEXIS 37872, at *84 ("Lodestar multipliers of nearly 5 have been deemed 'common' by courts in this District.") (collecting cases).  *See also In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 489 (S.D.N.Y. 1998) (Judge Sweet approving fee representing a multiplier of 3.97, and noting that lodestar multiples of between 3 and 4.5 are common).

## IV.    THE COURT SHOULD REIMBURSE CO-LEAD CLASS COUNSEL FOR EXPENSES INCURRED IN CONNECTION WITH THIS LITIGATION

"It is well established that counsel who create a common fund like this one are entitled to the reimbursement of expenses that they advance to a class."  *In re Marsh ERISA Litig.*, 265 F.R.D. at 150 (citing *In re Veeco Instruments Inc. Sec. Litig.*, No. 05-md-1695, 2007 U.S. Dist. LEXIS 85554, at **32-33 (S.D.N.Y. Nov. 7, 2007)).  *See also Shapiro*, 2014 U.S. Dist. LEXIS

37872, at *86 ("Courts in the Second Circuit normally grant expense requests in common fund cases as a matter of course."); *In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, 246 F.R.D. 156, 178 (S.D.N.Y. 2007) ("Counsel is entitled to reimbursement from the common fund for reasonable litigation expenses."); FED. R. CIV. P. 23(h).   The Court may award reimbursement of reasonable out-of-pocket expenses incurred by counsel and customarily charged to their clients, as long as these were "'incidental and necessary' to the representation...." *Reichman v. Bonsignore, Brignati & Mazzotta, P.C.*, 818 F.2d 278, 283 (2d Cir. 1987).  *See also In re Marsh ERISA Litig.*, 265 F.R.D. at 150 ("The expenses that may be reimbursed from the common fund encompass all reasonable litigation-related expenses.").

Here, Co-Lead Class Counsel respectfully request reimbursement of $261,757.11 in expenses, which were advanced or incurred collectively while prosecuting this Action.   The expenses were all reasonable, necessary, and directly related to the prosecution of the Action, and include standard litigation costs and expenses such as costs for experts, document depository, deposition and court transcripts, court reporters, copying, postage, and other costs incurred during the litigation of this Action.   These expenses were critical to Co-Lead Class Counsel's success in achieving the proposed Settlement.  *See* Joint Decl. ¶¶ 55-57.

Courts routinely deem these types of expenses reasonable and worthy of reimbursement. *See, e.g.*, *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. at 468 ("The expenses incurred – which include investigative and expert witnesses, filing fees, service of process, travel, legal research and document production and review – are the type for which the paying, arms' length market reimburses attorneys [and] [f]or this reason, they are properly chargeable to the Settlement fund.").

To date, no objections have been received regarding Co-Lead Class Counsel's request for reimbursement of expenses.  Accordingly, Co-Lead Class Counsel respectfully request that the Court grant the request for reimbursement of expenses in full.

## V.    THE REQUESTED NAMED PLAINTIFF CASE CONTRIBUTION AWARDS ARE FAIR AND REASONABLE

"Case law in this and other circuits fully supports compensating class representatives for their work on behalf of the class, which has benefited from their representation."  *In re Marsh ERISA Litig.*, 265 F.R.D. at 150.  In this Circuit, "the Courts have, with some frequency, held that a successful Class action plaintiff, may, in addition to his or her allocable share of the ultimate recovery, apply for and, in the discretion of the Court, receive an additional award, termed an incentive award."  *Bellifemine v. Sanofi-Aventis, U.S., LLC*, No. 07-cv-2207, 2010 U.S. Dist. LEXIS 79679, at *20 (S.D.N.Y. Aug. 6, 2010).

The excellent result obtained in this Action could not have been achieved without the substantial and continuing efforts of the two Plaintiffs.  From the time the initial complaints were filed through the Settlement, they were kept abreast of the details of the litigation and offered their insight and opinions.  Each Plaintiff actively and effectively fulfilled his/her obligations as a Class representative, complying with all reasonable demands placed upon them during the prosecution and settlement of this Action, and provided invaluable assistance to Co-Lead Class Counsel.  Plaintiff Moore and Plaintiff Gwyer devoted substantial effort and time to this litigation on behalf of the Class, reviewing draft pleadings and motions, searching for and producing relevant documents, reviewing filings, and communicating regularly with Co-Lead Class Counsel throughout the litigation process.  Both Plaintiff Moore and Plaintiff Gwyer have submitted declarations whereby they attest to, *inter alia*, their participation in the Action and the work they performed.  *See* Joint Decl. Exhibits 5 and 6.

22

Here, Plaintiffs request an incentive award in the amount of $5,000 each to compensate them for their efforts and personal time spent advancing the litigation on behalf of the Settlement Class.  The requested amount is in line with awards in similar complex class actions awarded in this Circuit and around the country.  *See, e.g.*, *Bd. of Tr. of AFTRA Ret. Fund*, 2012 U.S. Dist. LEXIS 79418, at **8-9 (awarding $50,000 to class representatives); *In re Marsh ERISA Litig.*, 265 F.R.D. at 151 (awarding case contribution awards in the amount of $15,000 to each of the three named plaintiffs); *Strougo v. Bassini*, 258 F. Supp. 2d 254, 264 (S.D.N.Y. 2003) (granting award of $15,000 to class representative).  *See also Griffin v. Flagstar Bancorp. Inc.*, No. 10-cv-10610, 2013 U.S. Dist. LEXIS 173702, at *25 (E.D. Mich. Dec. 12, 2013) (order awarding $5,000 case contribution awards to two plaintiffs noting request was "reasonable given their involvement" in the litigation); *In re Schering-Plough Corp. Enhance ERISA Litig.*, 2012 U.S. Dist. LEXIS 75213, at **23-24 (order awarding one named plaintiff $5,000).  Here, any amounts awarded by the Court to Plaintiffs as Case Contribution Awards will be paid by paid by Defendants' insurance carrier, not out of the Settlement Fund.  Settlement Agreement ¶ 11.4. Additionally, to date no Class member has objected to the request for the award, further confirming the reasonableness of the requested Case Contribution Awards to the Plaintiffs.

## VI.   CONCLUSION

Based on the foregoing, Plaintiffs respectfully request the Court approve Co-Lead Class Counsel's request for an award of attorneys' fees in the amount of $3 million, approve the reimbursement of expenses in the amount of $261,757.11, and approve Case Contribution Awards in the amount of $5,000 each to the two Plaintiffs.

Dated:  July 13, 2015                          Respectfully submitted,

                                               */s/ Mark K. Gyandoh*
                                               KESSLER TOPAZ

MELTZER & CHECK, LLP
Edward W. Ciolko
Mark K. Gyandoh
Donna Siegel Moffa
Julie Siebert-Johnson
280 King of Prussia Road
Radnor, PA 19087
Telephone:  (610) 667-7706
Facsimile:  (610) 667-7056

*/s/ Robert I. Harwood*
HARWOOD FEFFER LLP
Robert I. Harwood
Samuel Rosen
Daniella Quitt
Tanya Korkhov
488 Madison Avenue
New York, NY  10022
Telephone:  (212) 935-7400

*Co-Lead Class Counsel*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 13th day of July, 2015, I electronically filed a copy of the foregoing with the Clerk of Court using the CM/ECF system which will send a notification to all counsel of record.

*/s/ Mark K. Gyandoh*
